ANSEL B. ROWE

*vs.*

THEODORE KERR ET TR.

Kennebec.   Opinion January 27, 1927.

*It is not within the discretion of the court to direct a verdict for either party, when the case shows material and admissible evidence upon which a verdict for the other party may be based.*

The declaration in this case was conceived to be in deceit, and the defendant clearly understood that deceit was the issue, and the case was tried upon that issue, and should not be dismissed, or the verdict disturbed because of omissions in the declaration.

Upon the evidence in this case it is not for the court to say the damages are excessive.

On exception and motion for new trial by defendant.   An action for deceit in a real estate transaction.   At the conclusion of the evidence counsel for defendant moved for a directed verdict on the ground that the plaintiff had not made out a case of deceit, to a denial of which defendant excepted.   A verdict of $1975.00 was rendered for the plaintiff and defendant filed a general motion for a new trial.   Motion and exception overruled.

The case is stated in the opinion.

*Robert A. Cony*, for plaintiff.

*Ralph W. Ferris*, for defendant.

SITTING:   WILSON, C. J., PHILBROOK, DUNN, BARNES, PATTANGALL, JJ.

BARNES, J.   This is an action for deceit in selling a farm.   Verdict was for the plaintiff in the sum of $1975.00, and the case comes up on general motion and defendant's exception to the refusal of the judge to direct a verdict, after the evidence was in.   Upon the ex-

ception; it is not within the discretion of the judge to direct a verdict for either party, when the case shows material and admissible evidence upon which a verdict for the other party may be based. *Wellington* v. *Corinna*, 104 Me., 252.

On the motion that the verdict be overthrown because against evidence and the weight of evidence, practically the same question controls; hence it becomes the duty of this Court to review the evidence.

The case was tried in a maze of uncertainties and indirection which rendered the task of the jury particularly difficult, and makes that of the Court, in reviewing the testimony unnecessarily arduous. The declaration was conceived to be in deceit, and since the defendant clearly apprehended that deceit was the issue, and the case was tried upon that issue, it should not be dismissed, and the verdict should not be overthrown because of omissions in the declaration.

It might be said that the evidence on material points is so unintelligible that the jury was left to hazard where certainty is demanded. But the jury not only heard the evidence; it had the benefit of arguments of counsel and the instructions of the judge, and the latter confessedly correct.

The problem for this Court is not to set out the verdict which we would have rendered, if we had heard the case as a jury, but on the contrary merely to decide whether or not the jury had competent evidence upon which they may have based the verdict which they found, evidence that in their minds outweighed the evidence of the defendant, and then whether their verdict is so manifestly wrong as to justify its reversal.

The transaction was one of everyday occurrence, the exchange of two parcels of real estate.

It is claimed that the defendant deceived the plaintiff by pointing out to him as boundaries of the estate to be deeded to the plaintiff natural monuments, as woods and a brook, which lay far outside the property to be deeded; that defendant asserted that the road frontage of the farm was 1950 feet, whereas, as matter of fact, the frontage was but 450 feet; that all incumbrances were cleared from the land before sale, while in truth a tax deed and a mortgage for nearly the value of the property were outstanding against it when sold; that plaintiff was assured by defendant that this property was worth $5000, when its value was but half that sum; that plaintiff was prevented from inspecting the Registry records of deeds by the insistence of

defendant that inspection was unnecessary and of great expense, and that plaintiff could not read the papers presented to him for signature, and was corruptly induced by defendant to sign them, to his great loss.

These, with other allegations of deceit, were testified to, and it is not improbable that the jury decided certain of the alleged matters of deceit sufficiently proven.

Denying all these accusations, defendant introduced a paper, dated nearly six months later than the conveyance, bearing plaintiff's signature and seal and the attestation of a most reputable attorney, which purports to release defendant from all obligations, of whatever nature and scope, "and particular from any alleged claim for damage on account of any possible imperfection in title to" the real estate conveyed to plaintiff.

On the one hand defendant testifies that he read this "release" to plaintiff, word for word, and that plaintiff read and studied it over for himself, and signed it, and further that the attorney said to him "That is a release, Mr. Rowe, is that right?" plaintiff replying, "Yes that is right"; while the plaintiff's testimony on this point is as follows:—

Q. Mr. Rowe, I hand you a paper, I don't know whether you can read it or not, but did you sign a release of the real estate in Manchester occupied by you, dated August 8th, 1925, do you remember signing that paper?

A. Yes, sir.

Q. Can you tell the court and jury how you happened to sign that paper?

A. I did not have my glasses with me. When I signed the paper the car was going, and I had to get the train home that night or stay over in Portland, and that would put me out where I had no one on the farm to look after the cattle, and Mr. Kerr brought this paper out in a hurry and said "Just put your signature in there and I will put it in and send it down to the Savings bank and get some papers and have them return it."

That is all I know about the paper.

Q. Was there any typewriting?

A. There may be, as there is there.

Q. You mean printing?

A. Yes, sir, but no typewritten words on it at all.

Q.  Did you trust Mr. Kerr at that time?

A.  Yes, sir.

*    *    *    *    *    *

Q.  Mr. Rowe, you say you was in an awful hurry when you signed that release?

A.  Yes, sir.

Q.  You do admit that you noticed printing on it?

A.  Yes, sir.

Q.  You looked it over?

A.  No, sir, I didn't have my glasses, but the coarse print I saw and the stamp.

Q.  Don't you know the coarse print was typewriting and the other was printing?

A.  I could tell the difference between the two.

Q.  Where was it signed?

A.  Right in his house at Westbrook on the big desk that is right in his office.

Q.  Was not that witnessed by Attorney Conolly?

A.  Not by anyone I know of.  It could not be for we were in his house in Westbrook.

Q.  Don't you know that you signed that in Conolly's office in Portland?

A.  No, I don't know it.

Q.  You do not remember?

A.  No, I don't remember ever signing it.

Q.  How many times did you go to Portland?

A.  Either 10 or 11 times;  I don't know which.

Q.  Was you ever at Connolly's office with Mr. Kerr?

A.  Yes, sir.  I never was at his office after we got our writings done, the transfers.

The attorney above referred to was not called as a witness, and the jury may have decided, under the instructions of the judge, that notwithstanding the so-called release may have been duly executed and witnessed and the plaintiff had forgotten where it was executed; the defendant, in obtaining the plaintiff's signature thereto, did not act in good faith, and that the release was procured by fraud.  Upon the whole, the detached and sometimes incoherent testimony apparently convinced the jury that the defendant willfully and purposely de--

ceived the plaintiff, or that he recklessly stated, as of his own knowledge, material facts susceptible of knowledge which were false; and a painstaking reading of the entire record fails to convince us that the verdict is wrong.

The record as made is hopelessly bewildering as to title at various times to the farm which plaintiff received, but again it is confessed that the judge correctly instructed the jury on this point.

Lastly, can we say that the damages are excessive?

If the jury found, and there is testimony directly affirmative on these points, that the road frontage was less than one-fourth of that represented, and that in other quarters the area was materially less than pointed out to the plaintiff upon inspection, it is not for us to say the damages are excessive.

Hence,

*Motion and exception overruled.*